FILED
IN CLERK'S OFFICE
2025 JUN 20 PM 12: 53
U.S. DISTRICT COURT
DISTRICT OF MASS.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
(Boston Division)

**LESLIE LAUD,**
Plaintiff,
v.
**POOJA PATEL,**
Defendant.

**Civil Action No. _____**

# COMPLAINT

Now come the Plaintiff, Leslie Laud, pro se, and states as follows:

## I. INTRODUCTION

1. Plaintiff Dr. Leslie Laud, the sole owner of the thinkSRSD LLC, brings this action to protect her exclusive rights in a body of instructional materials she solely developed, starting in 1997 when she taught a class on writing instruction, and has copyrighted for a structured writing program used nationally by educators and funded through federal and state educational initiatives to help raise outcomes for high-need students.
2. Plaintiff has worked full time for over fifteen years solely developing an original manual, earning as little as $27,000 per year at times for full time work to develop this.
3. Delivering professional development on this manual continues to be the sole work of Plaintiff, following a 35-year career in education with last 15 spent doing only this work.
4. Defendant Pooja Patel, a former independent contractor has made opportunistic, baseless and harmful claims to joint ownership of these materials that Plaintiff solely created and uses daily in the work she does.
5. As a contractor, this work was side income only to Defendant, and in recent years, Defendant did not do any contract work at all.
6. Defendant has suddenly made these claims after never asserting this before, and despite contributing no original copyrightable content, earning above market rates of up to $500/hr for running workshops (totaling over $200,000 for part-time support) and acknowledging her non-ownership in multiple communications over several years, as her pay scale was set to acknowledge this.
7. After having disappeared for years, showing little interest in helping thinkSRSD expand and not acting in any way that suggests she believed she had joint ownership, Defendant resurfaced to seize the rights to independently own and sell the full manual as well as to lead professional development in competition to thinkSRSD, jeopardizing the thinkSRSD organization and unjustly enriching herself.

8. In fact, Defendant has repeatedly acted in ways harmful to thinkSRSD, seeking to adopt and use the approach of its main competitor and undermining trust in the organization in front of clients.
9. While it is customary to list the names of presenters on manuals in workshops and to refer to learning shared with teachers as 'our work' when presenters use the approach themselves also as teacher, this does not and never did imply joint-ownership of the underlying material.
10. Plaintiff now seeks a declaratory judgment to safeguard her legacy and confirm her sole authorship and ownership of the copyrighted works, injunctive relief to prevent further false claims or misuse, and damages resulting from Defendant's interference with Plaintiff's business and reputation.

## II. JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 as the claims arise under the Copyright Act, 17 U.S.C. §§ 101 et seq.
5. This Court also has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.
6. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District, including development, publication, use, and enforcement of the copyrighted works.
7. Plaintiff resides and works in Easton, Massachusetts, and the harm caused by Defendant's conduct is felt in this District.

## III. PARTIES

8. Plaintiff Dr. Leslie Laud is an educational researcher and entrepreneur residing in Eastern, Massachusetts. She is the sole founder of thinkSRSD and the sole author and copyright holder of its associated materials.
9. Defendant Pooja Patel is a resident of New Jersey and was formerly retained as a contractor by Plaintiff to deliver professional development services using materials authored solely by Plaintiff.

## IV. FACTUAL BACKGROUND

A. Sole Authorship and Copyright Ownership

10. Since 1997, Plaintiff has developed instructional materials for writing instruction in K–12 settings under the thinkSRSD model, including a 178-page manual, workshop guides, handouts, and training content.

2

11. In 2008, Plaintiff contacted organizations that run professional development that had hosted Plaintiff's workshops previously and set up to run another.
12. Plaintiff invited Defendant only to deliver the same workshop, using all the materials Plaintiff had developed. Defendant contributed one page to the packet which was non-essential and removed in the next set of handouts.
13. Starting in 2008, Plaintiff began registering materials she created with the US Copyright office.
14. Between 2008-2014, Plaintiff began to daily led professional development for teachers on this approach and developed materials on her own, with little to no interaction with Defendant. Defendant may have led two professional development sessions during these six formative years when Plaintiff developed the key materials in question.
15. Plaintiff repeatedly invited Defendant (and others) to be part of projects, grants and other projects with the expectation that if these materialized, Defendant would play a larger role in the organization, and joint projects could be explored. When grants were secured in 2020 and 2021, Defendant declined to participate. When exploring joint ventures, Defendant was never able to reach terms, making offers such as that she would own 1/3 of any company Plaintiff began (while still holding her other full time job) – driving off potential investors and causing Plaintiff to stop even exploring such options with her.
16. In 2014, Plaintiff opened and then operated under a Massachusetts LLC, alone. She has continuously edited, updated, and published revised versions of the manual and associated content, all at her own initiative and expense, and all copyrighted under her name only.
17. Plaintiff has invested herself personally over $40,000 annually in marketing and pro bono donations or goods and services to high-need schools, hosted training for hundreds of schools, and was awarded an $11 million federal grant in 2021 to research and expand the program nationwide. Defendant did not contribute to marketing or grant writing, but benefited from a generous daily rate payment from thinkSRSD all along.

B. Contractor Status of Defendant

13. Between 2014 and 2024, Defendant was compensated as a contractor to deliver a limited number of workshops. She received more than $200,000 in total for this part time work, limited work, including up to $2,500/day or $500/hour—substantially above market rate of $600-800 per day.
14. Defendant did not contribute to substantive development, marketing, or overhead. She had no decision-making power, no financial investment, and no shared legal ownership, which was reflected in payment schedules set and the work for hire arrangement.

C. No Joint Authorship or Ownership

15. When Plaintiff asked for contributions or feedback, Defendant usually ignored these or noted a single typo. Plaintiff developed essentially every page in the binder from start to end, independently and on her own.
16. Over the years, Defendant shared a handful (3-4) of classroom examples that illustrated how the approach could look in a classroom to the 154 page manual that Plaintiff solely developed.

3

17. By 2017, 3-4 of these were added to the 154 page manual, temporarily, adding less than 2-3% after the manual was fully developed and functional independently, easily removed and not part of a unified whole. None were essential and all were removed and replaced with more current samples that reflect changes in the program. All were based on Plaintiff's existing IP or opensource IP.
18. In January of 2017, Plaintiff proposed creating a brand new and fully separate book to accompany the program. Plaintiff stated that Plaintiff receives all income from the binder (and implies would continue to), but they would split income (not ownership) on this new book. The new book never materialized.
19. In February of 2017, Defendant submitted a single chapter. In retrospect, this paper appears to have been something Defendant likely created as part of her graduate coursework, as Defendant had begun taking graduate classes and writing a paper on this topic, seeking advice from Plaintiff and other researchers on readings to cite and include.
20. This paper was quickly removed due to the theoretical, rather than practical, nature of it.
21. Defendant did not contribute anything further that spring until Plaintiff extensively outlined the project.
22. By June, 2017, Plaintiff authored the full 40-page outline of the project and subsequently rewrote and integrated only her own original material into the manual.
23. During late July and August, Defendant edited the outline, turning the phrases on her 20 pages of the outline into sentences that remained to be about 20 pages. No parts of Defendant's appear original nor do any contributions remain.
24. By mid-August, Defendant said she was unable to work further on the book. With still only 20 pages (that came from 20 pages of the outline Plaintiff wrote), Plaintiff added these 20 pages to the prior manual, which had not been the plan.
25. The plan had been to write a new book to serve as marketing outreach and to be separate from the prior manual. This plan was never achieved.
26. As a result, nothing new was created as planned. Instead. Defendant merely typed up an outline, given to her and solely created by Plaintiff, and those pages were added to the already existing material created by Plaintiff.
27. No agreement for shared authorship or royalties was ever signed or implemented. In fact, Defendant was paid at a premium rate of nearly $500/hr, and over $200,000 over 8 years of delivering professional development, as high as $53,000 some years for part time work.
28. Had Plaintiff realized Defendant would have wanted to be considered as joint-owner, the pay structure would have differed.
29. Since Defendant often led the workshops, Plaintiff put both Plaintiff and Defendant's names on the manual, with the understanding that this represented who led the courses and never indicated joint underlying ownership.
30. Plaintiff used the term "our manual" generously with all contractors, broadly suggesting the work represented the teachings we together as a group were using as teachers and delivering in workshops that contractors ran.
31. In 2019, 2021, and 2023, Defendant declined opportunities to receive a sales commission (at times called "royalties", but only in the sense of a sales commission) on copies of the book that she brought in buyers for.
32. In 2019, Defendant stated that she did not plan to run workshops much longer. She did not behave in a way that suggested she believed she was a joint owner. When Plaintiff

33. offered her a sales commission, she suggested putting that back into the company, but also noted she did not plan to run more courses and over the next few years ran almost none.
34. Defendant did not even list the book at Linked-in or in her bios for other consulting groups she worked for.
35. For the years of 2021 and 2022, Defendant did not offer any professional development, nor assist with grant writing or any projects taking place at the time. She pursued her own entrepreneurial efforts, separately.
36. During these years, Plaintiff asked for assistance in promoting the approach on social media. Defendant told her she was taught to never give anything for free or that she'd been accused of promoting something she offers workshops on, and so usually declined, apart from a small number of requested posts.
37. However, in 2025, Defendant posted that thinkSRSD's course makes a great Christmas gift which was out of character, never stated before and likely building evidence to suggest promotion and implied joint effort.
38. In 2023, after thinkSRSD began to grow, with no contributions from Defendant toward this effort - Defendant explicitly acknowledged she did not receive royalties and was only paid for work delivered.
39. In text messages and emails, Defendant stated: "I don't get royalties" and "I only get paid when I do work." She never claimed ownership in public materials, Linked in or contracts.
40. In fact, in 2022, Defendant informed Plaintiff that she was bringing all the teachers in her school to learn and take on 'Keys to Literacy' which is direct competition to thinkSRSD. Plaintiff informed Defendant her name would be removed from the cover of the book, as she no longer delivered workshops on it and was now moving to adopt the competition, and Defendant replied that this was fine. Her name is no longer on the cover, and was removed before Defendant made this current demand.
41. When Keys to Literacy intiated a conversation with thinkSRSD in 2020 about partnering, thinkSRSD did not include Pooja. In 2024, Plaintiff included Defendant on a call to discuss Keys to Literacy offering professional development on thinkSRSD in order to promote our interests. During this call, Defendant praised the work of Keys of Literacy rather than thinkSRSD.

D. Disparagement and Interference

20. In 2024, Defendant publicly stated to educators in a workshop: "Leslie will get you fired if you do what she says," and expressed disagreement with thinkSRSD regarding instruction in personal narratives, revision and other key areas in front of 30+ workshop attendees.
21. In feedback on the session, participants noted that they no longer agreed with Leslie (Plaintiff)'s stances and now agreed only with Pooja's, undermining trust in Leslie's judgement and thinkSRSD's general approach.
22. Defendant also leveraged her historical association with the program to gain promotions and influence in her full-time job, sharing with her supervisors that she was offered a $150,000 job offer, following thinkSRSD winning a grant, as a way to strengthen her current position in her current job.

23. Also in 2024, Defendant announced in a large social media group designed to promote and market thinkSRSD that she would mentor teachers independently with financial transactions taking place. Defendant leveraged her name recognition in this group from being on the cover the manual to pull potential clients away from thinkSRSD and to her own business, draining thinkSRSD and undermining the small organization's viability.
24. Defendant pressured Plaintiff for not following through on her ideas to run a conference or a podcast as Plaintiff tried to explain how much time and effort would be needed for these to be done well. Defendant accused Plaintiff of blocking her ideas, rather than understanding the realistic time pressures this would cause and Plaintiff's history of shouldering the vast majority of the work in all efforts to date, which they both acknowledged.
25. Following these actions, Plaintiff asked Defendant to find a lawyer to iron out terms and seek a more productive way to work together. Defendant also told a parent that she runs her own company. Unsure what this company did, Plaintiff also wanted lawyers to help iron out how Defendant's new company would work with thinkSRSD.
26. Rather than doing so, Defendant found a lawyer to assert her co-ownership over the material Plaintiff solely developed, after never having asserted this before.
27. In 2025, Defendant hired counsel and demanded equal ownership of the thinkSRSD manual, the right to sell it independently, and to deliver professional development in direct competition with Plaintiff, potentially closing down thinkSRSD.
28. Defendant's actions constitute not only false claims of ownership but a direct threat to Plaintiff's business, public credibility, and federally funded operations.
29. They also threaten the very real public mission work done at thinkSRSD.

## V. CAUSES OF ACTION

Count I: Declaratory Judgment – Sole Copyright Ownership

(28 U.S.C. § 2201; 17 U.S.C. § 101)

24. Plaintiff seeks a judicial declaration that she is the sole author and owner of the thinkSRSD instructional materials and that Defendant has no claim to authorship or co-ownership.

Count II: Injunctive Relief

25. Defendant's continued assertion of ownership and interference with Plaintiff's business relationships constitutes an ongoing threat of irreparable harm.
26. Plaintiff seeks a permanent injunction restraining Defendant from using, distributing, or claiming ownership of any thinkSRSD materials.

Count III: Tortious Interference with Business Relationships

27. Defendant's false claims and disparagement have interfered with Plaintiff's contracts and prospective relationships with schools, educators, and grant-funded partners.

Count IV: Unjust Enrichment

28. Defendant received substantial compensation (over $200,000 for part time contracted work at nearly $500/hour as work for hire) without contributing original content or assuming any business risk.
29. Defendant now seeks to benefit further by asserting claims to work she did not create or fund, constituting unjust enrichment.

## VI. PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

a. Enter a declaratory judgment that Plaintiff is the sole author and copyright owner of the thinkSRSD materials;

b. Enter a permanent injunction prohibiting Defendant from asserting ownership or authorship of the thinkSRSD materials, or using, selling, or distributing them in any form;

c. Award damages in an amount to be proven at trial for reputational harm and interference;

d. Award attorneys' fees and costs as permitted under 17 U.S.C. § 505 and other applicable law;

e. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*Leslie Laud*

**Dr. Leslie Laud**
46 Wellesley Ave

Wellesley, MA 02482
Leslie@thinkSRSD.com
Pro Se Plaintiff

Dated: June 17, 2025

7